In re PEREGRINE SYSTEMS, INC. SECURITIES LITIGATION,

Loran Group, Plaintiff–Appellant,

and

Alan Marshall; et al., Plaintiffs,

v.

Peregrine Systems, Inc.; et al., Defendants–Appellees.

No. 06–55197.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 2007.

Submission Withdrawn Nov. 7, 2007.

Resubmitted Jan. 8, 2009.

Filed Jan. 23, 2009.

**150**

Before FARRIS and PAEZ, Circuit Judges, and BLOCK,* Senior District Judge.

### MEMORANDUM**

Proceeding under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), Plaintiff–Appellant, the Loran Group ("Loran"), seeks to hold seventeen individuals and four entities liable for securities fraud carried out by Peregrine Systems, Inc. ("Peregrine").[1] It appeals two orders of the district court dismissing, with prejudice, its claims against 11 of the 21 defendants. Because

the facts are known to the parties, we need not repeat them here.

We previously withdrew submission of the appeal pending the Supreme Court's decision in *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. ——, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008). We then deferred resubmission to allow Loran and some of the defendants-appellees to pursue settlement negotiations. On January 8, 2009, we remanded the matter to the district court as to Defendants–Appellees John J. Moores, Charles E. Noell III, Christopher A. Cole, Norris van den Berg, Richard A. Hosley II, Rodney F. Dammeyer, Richard T. Nelson and Frederic B. Luddy, to allow those parties and Loran to seek approval of their settlement pursuant to Fed.R.Civ.P. 23(c); we resubmitted the appeal as to Defendants–Appellees KPMG LLP, Bearingpoint, Inc., and Larry Rodda ("the KPMG Defendants"). Accordingly, we here address Loran's claims against only the KPMG Defendants.

As the district court recognized, there is no doubt that Peregrine committed fraud; the only question is who can be held liable for it. Central to this appeal is Loran's ability to hold non-speaking defendants liable as primary violators of § 10(b) for participating in a scheme to defraud Peregrine investors.[2] In *Stoneridge*, the Supreme Court held that an oral or written statement is not a condition precedent to liability under § 10(b), and that "[c]onduct itself can be deceptive"; however, such "conduct of a secondary actor must satisfy

---

* The Honorable Frederic Block, Senior United States District Judge for the Eastern District of New York, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

1.  Peregrine itself is not a defendant; the company filed for bankruptcy in 2002 and was acquired by Hewlett–Packard Company in 2005. *See* Hewlett–Packard, *HP Completes Acquisition of Peregrine Systems, Boosting HP OpenView Software Portfolio* (Dec. 19, 2005), http://www.hp.com/hpinfo/newsroom/press/2005/051219xa.html (last visited January 20, 2009).

2.  Loran does not seek to hold the KPMG Defendants vicariously liable for primary violations under § 20(a).

each of the elements or preconditions for liability," *i.e.,* scienter, a connection with the purchase or sale of a security, reliance, economic loss and loss causation. 128 S.Ct. at 769.[3]

■ In its First Amended Consolidated Complaint ("FAC"), Loran alleged that the KPMG Defendants enabled Peregrine to improperly recognize $32.1 million in revenue by agreeing to purchase software at the end of fiscal quarters when Peregrine could not complete legitimate sales to end users in time to properly recognize revenue; these "parking" transactions allowed Peregrine to meet its quarterly projections. In exchange for allowing Peregrine to "park" software, KPMG received service contracts with end users, to whom the software would subsequently be sold.

Under *Stoneridge,* which concerned similar allegations, these transactions cannot form the basis of § 10(b) liability unless a "member of the investing public had knowledge ... of [the business partner's] deceptive acts" sufficient to demonstrate "reliance upon any of [the business partner's] actions." *Stoneridge,* 128 S.Ct. at 769.

Loran contends that because press releases referencing a partnership between Peregrine and KPMG were issued to the investing public, it can demonstrate reliance using the fraud-on-the-market presumption. *See Basic Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) (adopting rebuttable presumption of reliance "where materially *mislead-*

*ing statements* have been disseminated into an impersonal, well-developed market for securities" (emphasis added)). However, these press releases, of which we take judicial notice,[4] do not communicate any information about the "parking" transactions; rather, they merely inform the public that KPMG and Peregrine were business partners—statements which were in no way misleading. *See, e.g.,* RJN, Ex. B ("KPMG ... has launched an Infrastructure Resource Planning ... consulting practice and selected the Peregrine ... product line as the software linchpin of its new service ...."); *id.,* Ex. D ("Peregrine ... has signed agreements with ... KPMG [among others] ... to provide consulting and implementation services for its Get.Resources! e-Procurement application."); *id.,* Ex. F ("Highlights Announced During the Quarter: ... Peregrine announces an alliance with KPMG consulting to bring Infrastructure Resource Planning to the transportation market."). Notably, not one of the press releases announces a specific transaction between KPMG and Peregrine.

Thus, the press releases did not communicate the KPMG Defendants' allegedly deceptive acts and, therefore, do not trigger a presumption of reliance. *See Stoneridge,* 128 S.Ct. at 769 (holding that the fraud-on-the-market presumption did not apply because business partners' "deceptive *acts* were not communicated to the public" (emphasis added)). As was the case in *Stoneridge,* it was Peregrine, not the KPMG Defendants, "that misled its

---

3. We note that until recently, a defendant could be liable in this circuit as a primary violator of § 10(b) for participating in a scheme to defraud if "the defendant ... engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme." *Simpson v. AOL Time Warner, Inc.,* 452 F.3d 1040, 1048 (9th Cir.2006). The *Simpson* de-

cision, however, was vacated on March 26, 2008, and the case was remanded to the district court for further proceedings in light of *Stoneridge. See Simpson v. Homestore.com, Inc.,* 519 F.3d 1041 (9th Cir.2008).

4. Five press releases were filed as exhibits to Loran's Request for Judicial Notice dated February 15, 2008 ("RJN").

auditor and filed fraudulent financial statements; nothing [the KPMG Defendants] did made it necessary or inevitable for [Peregrine] to record the transactions as it did." 128 S.Ct. at 770.

Loran seeks leave to amend the FAC in order to conform it to the principles announced in *Stoneridge;* more specifically, Loran offers to bolster its allegations of reliance as to the KPMG Defendants by amending the FAC "to reference the . . . press release[s] and similar documents." Appellant's Supplemental Br. 11.

■ "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence ·Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003). Here, it is clear, for the reasons explained above, that the press releases and other similar information Loran seeks to incorporate into a newly amended complaint cannot save the FAC; therefore, leave to amend is denied.

For the reasons stated above, the district court's dismissal, with prejudice, of Loran's claims against the KPMG Defendants is **AFFIRMED.**

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.